COX, CASTLE & NICHOLSON LLP
Morgan L. Gallagher (State Bar No. 297487)
    MGallagher@coxcastle.com
Jamie L. Sprague (State Bar No. 287689)
    JSprague@coxcastle.com
3121 Michelson Drive, Suite 200
Irvine, California 92612-5678
Telephone: (949) 260-4600
Facsimile: (949) 260-4699

Attorneys for Plaintiff
DISH Network L.L.C.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| DISH WIRELESS L.L.C., a Colorado limited liability company,<br><br>    Plaintiff/Petitioner,<br><br>v.<br><br>CITY OF FOUNTAIN VALLEY, a California municipal corporation,<br><br>    Defendant/Respondent. | Case No. 8:23-cv-2069<br><br>**COMPLAINT AND PETITION FOR:**<br><br>**(1) VIOLATION OF 42 U.S.C. § 1983;**<br><br>**(2) VIOLATION OF 47 U.S.C. § 332(c)(7)(B)(ii);**<br><br>**(3) VIOLATION OF 47 U.S.C. § 332(c)(7)(B)(i);**<br><br>**(4) WRIT OF ADMINISTRATIVE MANDATE;**<br><br>**(5) WRIT OF ORDINARY MANDAMUS;**<br><br>**(6) INVERSE CONDEMNATION; AND**<br><br>**(7) DECLARATORY RELIEF**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff DISH Wireless L.L.C. ("**DISH**") alleges as follows:

## INTRODUCTION

1. DISH brings this action for violations of federal law including 42 U.S.C. § 1983 and 47 U.S.C. § 332. This Court also has diversity jurisdiction under 28 U.S.C. § 1332.

2. DISH challenges the actions of the City of Fountain Valley and the City Council of the City of Fountain Valley in their official capacities as the governing and policy-making officials ("**City Council**," and together with the City of Fountain Valley, "**City**"), in revoking Administrative Wireless Communication Facilities Permit 22-09 ("**Administrative Permit**") which allowed DISH to install wireless antennas and an equipment enclosure (collectively, "**Facility**") on an existing utility tower.

3. Ignoring deadlines written into federal law and its own municipal code, the City waited *over a year* from the time that it issued the Administrative Permit until the time that it wrongfully revoked it. By that time, DISH had already substantially completed its installation of the Facility.

4. The City's revocation is an illegal taking of DISH's vested property rights in the Facility and violates DISH's substantive due process rights under the United States Constitution.

5. The City has offered no just compensation to DISH for taking its property. Instead, DISH has expended substantial sums of money opposing the revocation of the Administrative Permit and now seeking enforcement of its rights in Court.

6. Additionally, the City's actions violate the "shot clock" under 47 U.S.C. § 332(c)(7)(B)(ii), which requires municipalities to act upon applications for wireless services facilities within a "reasonable time." The Federal Communications Commission ("**FCC**") rules interpret a "reasonable time" to be no more than one hundred fifty days after submission of the application. The City's

wrongful revocation of the Administrative Permit occurred long after the FCC's "shot clock" removed its authority to act on DISH's application.

7. In addition to subjecting the City to liability for its violations of DISH's rights, the City's revocation is subject to a writ of mandate because the City failed to proceed in the manner required by law.

## PARTIES

8. Plaintiff DISH Wireless L.L.C. is a Colorado limited liability company qualified to do business in California with its principal place of business at 9601 South Meridian, Englewood, Colorado 80112. DISH is a fully owned subsidiary of DISH Network Corporation. DISH Network Corporation is incorporated in Nevada and has its principal place of business in Colorado.

9. Defendant City of Fountain Valley is a municipal corporation, organized and existing under the laws of the State of California, with the capacity to sue and be sued. The City of Fountain Valley's principal place of business is at 10200 Slater Avenue, Fountain Valley, California 92708. The City of Fountain Valley is governed by City Council, which is responsible for the enactment and application of local ordinances and policies that are consistent with and do not violate the Constitutions and laws of the State of California and the United States. The term "City" includes the City of Fountain Valley's officers, employees, and agents acting under color of state law and within the scope of their authority.

10. City Council is the elected and governing body responsible for the policies, practices, and actions undertaken by the City of Fountain Valley.

## JURISDICTION, VENUE, AND EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Jurisdiction of the Court is proper because DISH alleges violations of federal law, *i.e.*, 42 U.S.C. § 1983 and 47 U.S.C. § 332.

12. Additionally, this Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 as the action is between citizens of different states and

1  the amount in controversy exceeds the sum of $75,000, exclusive of interest and
2  costs.
3      13.    DISH additionally seeks writs of administrative mandamus pursuant to
4  California Code of Civil Procedure section 1094.5 and ordinary mandamus
5  pursuant to California Code of Civil Procedure section 1085. DISH further seeks
6  adjudication of its claim for inverse condemnation under the California Constitution
7  and declaratory relief pursuant to California law. This Court can properly exercise
8  supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367.
9      14.    Venue in this Court is proper under 28 U.S.C. § 1391(b) because the
10 City of Fountain Valley is located within Orange County, which is within the
11 jurisdiction of this district, and all of the events that are the subject of this
12 Complaint took place within the jurisdiction of this district.
13     15.    DISH has performed all conditions precedent to filing this Complaint
14 and Petition and has exhausted any and all available administrative remedies to the
15 extent required by law.

## FACTS COMMON TO ALL CLAIMS

**A. The Facility**

16     16.    DISH began searching for a location for the Facility in Fountain
19 Valley in early 2021 to fulfill its mandate from the FCC to provide 5G broadband
20 access to 75% of the population within each of its spectrum license areas. The
21 purpose of the Facility was to provide 5G service for the surrounding
22 neighborhood, including e-911 services to the community in case of emergencies.
23     17.    After performing an extensive search to find the best location for the
24 Facility, DISH determined that Harper Park, in southeastern Fountain Valley,
25 would provide the best service for customers while limiting impacts to the
26 surrounding community.
27     18.    The antennas and associated equipment were to be installed on
28 property within Harper Park owned by Edison Carrier Solutions ("**Edison**"), on

information and belief, an affiliate of Southern California Edison. DISH specifically chose this location because it could build the Facility in the footprint of an existing Edison utility tower instead of contributing to the proliferation of towers in the area.

19. On or about May 12, 2022, DISH submitted an application for a permit to install the Facility, *i.e.*, three wireless antennas and six radios on the existing Edison tower and a 10-foot by 10-foot equipment structure to house electrical equipment at ground level under that tower.

20. Following a review process by a Mr. Matt Jenkins, a Senior Planner for the City, the City approved the Administrative Permit on September 13, 2022.

21. Section 21.28.090(a)(1)(B) of the City's Municipal Code states that a decision on an administrative permit for wireless communication facilities is final "ten calendar days following the date of the decision unless an appeal is filed in compliance with Fountain Valley Municipal Code Chapter 21.60." And Section 21.60.050 of the Municipal Code states that an appeal must be submitted within ten calendar days following a City determination to be timely.

22. No appeal was filed in the ten calendar days following the City's approval of the Administrative Permit on September 13, 2022, so the decision became final on September 23, 2022. No party filed a petition for writ of mandate challenging the City's decision.

23. Shortly thereafter, on October 12, 2022, DISH applied for a building permit that would allow construction of the Facility as authorized by the Administrative Permit (the "**Building Permit**").

24. On February 8, 2023, the City issued the Building Permit to DISH. No party challenged the issuance of the Building Permit within the 90-day statute of limitations in California Government Code section 65009.

25. Construction of the Facility began on or about April 24, 2023, when green construction fencing was installed around the perimeter of the Edison tower.

26. The City completed inspections for the Building Permit on May 18, May 19, May 26, and May 31, 2023.

27. By July 2023, construction of the Facility was nearly complete. As of the date of filing this Complaint, the ground level 100 square foot equipment enclosure is constructed and the equipment inside is installed. The only outstanding task is the installation by Edison of the steel brackets on the structure to which the antennas will be fastened.

28. Because DISH completed substantial work and incurred substantial liability in good faith reliance on the Administrative Permit and the Building Permit, DISH has vested rights to build and operate the Facility.

29. The City Attorney's Office acknowledged DISH's vested rights several times, including in a staff report ("**Staff Report**"), which stated "Dish has a vested right to complete construction in accordance with the terms of the building permit."

B. <u>Mr. Scheppele's Untimely Appeal</u>

30. On information and belief, a resident of Fountain Valley, Mr. Lyle Scheppele, noticed DISH's construction fencing in Harper Park on or about April 24, 2023.

31. On information and belief, Mr. Scheppele was unhappy with the construction and investigated the Administrative Permit.

32. On information and belief, on May 17, 2023, Mr. Scheppele reviewed the Administrative Permit and met with City staff to discuss the Facility. On information and belief, the next day, the City sent Mr. Scheppele the plans for the Facility.

33. On information and belief, no later than May 29, 2023, Mr. Scheppele had in his possession and had reviewed all documents relevant to the City's approval of the Administrative Permit, including the Administrative Permit itself and the Facility plans DISH had submitted to the City.

34. On information and belief, on or about June 8, 2023, Mr. Omar Dadabhoy, the Director of Community Development for the City, informed Mr. Scheppele that he would not issue a stop work order for the Facility because DISH had a vested right to build based on issuance of the Building Permit.

35. On Saturday, June 10, 2023, Mr. Scheppele sent an email to the City, requesting an appeal of (i) the City's approval of the Administrative Permit on September 13, 2022; and (ii) the Community Development Director's decision to not issue a stop work order on or about June 8, 2023 (the "**Appeal**"). In requesting the Appeal, Mr. Scheppele claimed for the first time that DISH should have obtained a Conditional Use Permit instead of an Administrative Permit for the Facility.

36. Mr. Scheppele requested the Appeal *two-hundred seventy days* after the City's approval of the Administrative Permit, in blatant violation of the City's Municipal Code requirement that an appeal be requested within *ten days* of a City determination.

37. Additionally, pursuant to the rules promulgated by the FCC, the deadline for the City to act on DISH's application was one-hundred fifty days after DISH submitted its application, or October 9, 2022. According to federal law, then, Mr. Scheppele requested the Appeal *two-hundred forty-four days* after the FCC shot clock removed the City's authority to act on the application.

38. By the time Mr. Scheppele filed his request for the Appeal, DISH had been actively building the Facility for more than six weeks and had substantially completed construction of the Facility.

39. In violation of its own Municipal Code and state and federal law, the City's Planning Commission nevertheless heard the Appeal on August 9, 2023.

40. Counsel for DISH appeared at the hearing on the Appeal and informed the Planning Commission that revoking the Administrative Permit and issuing a stop work order would violate local, state, and federal law.

41. The City's own attorney, Ms. Alex Halfman, agreed. The Staff Report prepared for the August 9, 2023, hearing recommends to the Planning Commission that Mr. Scheppele's "request to appeal the decision to issue the Permit should be denied" because it was filed outside the ten-day limit for appeals in the City's Municipal Code. The City Attorney opined that the Administrative Permit had been validly issued under municipal and federal law applying to wireless services applications.

42. The City Attorney further stated:

> Dish has already started construction of the Facility, implementing the building plans, and expending funds . . . . Because Dish has performed substantial work and incurred substantial liabilities in good faith reliance upon Building Permit 2022-1705, Dish has a vested right to complete construction in accordance with the terms of the building permit.

43. The City Attorney recommended that the Planning Commission not issue a stop work order.

44. The Planning Commission decided to uphold the Administrative Permit as validly issued. However, ignoring the logical conclusion of that decision and against advice of its own attorney, it also directed staff to issue a stop work order to DISH (the "**Stop Work Order**").

45. Under protest that the Stop Work Order was illegal, DISH nonetheless complied and has not performed final construction on the Facility since August 9, 2023.

C. **The City Council Appeal**

46. DISH appealed the Stop Work Order to City Council; Mr. Scheppele appealed the Planning Commission's decision to uphold the Administrative Permit. On September 19, 2023, City Council considered the Appeal.

47. Counsel for DISH again appeared and explained to the City Council that the Stop Work Order and revocation of the Administrative Permit (i) violated the deadlines in the City's own Municipal Code; (ii) violated the FCC shot clock rules; and (iii) illegally deprived DISH of its vested rights in the Facility.

48. The City Attorney again opined that the Appeal was untimely and lacked merit and that DISH had vested rights in the Facility.

49. Ignoring the advice of the City Attorney and over DISH's objections, the City Council voted to uphold the Appeal challenging City's issuance of the Administrative Permit and deny DISH's appeal of the Stop Work Order.

50. On October 3, 2023, the City Council adopted Resolution No. 99-01 which reversed the Planning Commission's decision to uphold issuance of the Administrative Permit, revoked the Administrative Permit, and affirmed the Stop Work Order.

## GROUNDS FOR INJUNCTIVE RELIEF

51. As a result of the City's actions, which violate municipal, state, and federal law, as described herein, DISH has been and will continue to be damaged and irreparably harmed absent the relief requested. The harm includes (i) impairment of DISH's ability to make necessary improvements to and enhancements of its wireless communications network, to provide high-quality and reliable service to the citizens of Fountain Valley, and to compete with other wireless network providers; and (ii) damage to its goodwill and business reputation.

52. The harm that DISH has suffered cannot be reasonably calculated and cannot be remedied by damages alone.

53. The public interest in the improvement of wireless services has also been harmed by the City's unlawful actions.

54. The City would suffer no harm if the injunctive relief requested herein is granted.

## FIRST CAUSE OF ACTION

### (Violation of 42 U.S.C. § 1983)

55. DISH hereby re-alleges and incorporates herein by this reference each and every allegation set forth in Paragraphs 1 through 54 of this Complaint, as though fully set forth herein.

56. The Fifth Amendment of the U.S. Constitution, made applicable to the States by the Fourteenth Amendment, provides that "[n]o person shall be . . . deprived of life, liberty, or property without due process of law . . . ."

57. Further, the Fifth Amendment of the U.S. Constitution, made applicable to the States by the Fourteenth Amendment, provides "[n]or shall private property be taken for public use, without just compensation."

58. The Civil Rights Act of 1871, 42 U.S.C. § 1983, provides a civil action for an injured party against every person who, under color of law, deprives a person of rights, privileges, and immunities secured by the Constitution and laws of the United States.

59. As described above, DISH has a vested property right in the Facility because it completed substantial work and incurred substantial liability in good faith reliance on the Administrative Permit and Building Permit prior to the Appeal.

60. At all times relevant to the matters alleged herein, the City acted under color of State law.

61. The City's actions in revoking the Administrative Permit and issuing the Stop Work Order were not an exercise of judgment on proper land use planning and zoning guided by legal standards but were manifestly arbitrary, capricious, and/or unreasonable and therefore violate DISH's substantive due process rights pursuant to the Fifth Amendment of the U.S. Constitution.

62. Further, by revoking the Administrative Permit and issuing the Stop Work Order without just compensation, the City violated the takings clause of the Fifth Amendment of the U.S. Constitution.

63.     Accordingly, DISH seeks a declaration that the revocation of the Administrative Permit and the issuance of the Stop Work Order violate its rights under the Fifth Amendment to the U.S. Constitution and an injunction against the enforcement of each.

64.     As a direct and proximate result of the City's actions, DISH has suffered and continues to suffer substantial damages, in an amount to be more specifically determined and proven at trial but no less than $75,000.

65.     As a result of the foregoing, DISH is entitled to damages and attorney's fees against the City.

## SECOND CAUSE OF ACTION

## (Violation of the FCC Shot Clock [47 U.S.C. § 332(c)(7)(B)(ii)])

66.     DISH hereby re-alleges and incorporates herein by this reference each and every allegation set forth in Paragraphs 1 through 65 of this Complaint, as though fully set forth herein.

67.     47 U.S.C. § 332(c)(7)(B)(ii) requires "[a] State or local government or instrumentality thereof" to "act on any request for authorization to place, construct, or modify personal wireless service facilities *within a reasonable period of time* after the request is duly filed with such government or instrumentality, taking into account the nature and scope of such request."

68.     The FCC interprets a "reasonable period of time" to mean that a government must act on a personal wireless services request within one hundred fifty days of submission. WT Docket No. 08-165, FCC 09-99 ("**Shot Clock Order**").[1] Pursuant to the Shot Clock Order, then, a government may not act on a personal wireless services request after the expiration of the Shot Clock.

69.     The City violated 47 U.S.C. § 322 as interpreted by the Shot Clock

---

[1] Certain types of applications for wireless services (*i.e.,* collocations and eligible facilities requests) have shorter shot clocks. DISH takes no position on whether its application here qualified for one of these shorter shot clocks. Such a determination is irrelevant to this action because the City acted far beyond the expiration of the generally applicable one hundred fifty day shot clock.

1  Order by acting on DISH's application after the expiration of the one hundred fifty
2  day shot clock.

3      70.    The City's stated reason for its unlawful revocation was that it should
4  have processed a conditional use permit, not an administrative permit, for the
5  Facility pursuant to the Fountain Valley Municipal Code. However, this does not
6  excuse its unlawful conduct. According to 47 U.S.C. § 322 and the Shot Clock
7  Order, the City was obligated to conduct all necessary administrative steps pursuant
8  to its municipal code *prior* to the expiration of the shot clock, including processing
9  a conditional use permit, if required.

10      71.    The City's revocation of the Administrative Permit after the expiration
11  of the FCC shot clock because of its untimely assessment that it failed to follow the
12  procedural requirements of its own Municipal Code is the exact type of procedural
13  delay that 47 U.S.C. § 322 and the Shot Clock Order were designed to prevent.

14      72.    Accordingly, even if an Administrative Permit were the improper
15  procedure for approving the Facility—it was not—the City's revocation so that it
16  could instead process a conditional use permit violated 47 U.S.C. § 322 and the
17  Shot Clock Order.

18      73.    DISH seeks declaratory relief that the City's revocation of its
19  Administrative Permit was a violation of 47 U.S.C. § 322(c)(7)(B)(ii) and
20  injunctive relief enjoining the enforcement of that revocation.

### THIRD CAUSE OF ACTION
### (Unlawful Prohibition of the Provision of Personal Wireless Services
### [47 U.S.C. § 332(c)(7)(B)(i)])

24      74.    DISH hereby re-alleges and incorporates herein by this reference
25  each and every allegation set forth in Paragraphs 1 through 73 of this Complaint, as
26  though fully set forth herein.

27      75.    47 U.S.C. § 332(c)(7)(B)(i)(II) states that "[t]he regulation of the
28  placement, construction, and modification of personal wireless service facilities by

any State or local government or instrumentality thereof . . . shall not prohibit or have the effect of prohibiting the provision of personal wireless services."

76. The City's unlawful revocation of the Administrative Permit and the issuance of a Stop Work Order has had the effect of prohibiting DISH from providing 5G services to the citizens of Fountain Valley who live within the applicable broadcast range supported by the tower.

77. DISH is unlikely to find a single replacement site to cover the Harper Park location. Instead, DISH is most likely to need to build multiple towers in order to solve the coverage gap. This has the effect of prohibiting personal service as DISH must choose between overbuilding or underbuilding.

78. 47 U.S.C. § 332(c)(7)(B)(i)(I) states that "[t]he regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof . . . shall not unreasonably discriminate among providers of functionally equivalent services."

79. The City's unlawful revocation of the Administrative Permit and the issuance of a Stop Work Order has the effect of discriminating against DISH because other wireless carriers have deployed facilities in the same park and numerous other carriers have attached antennas to Edison towers throughout the City of Fountain Valley.

80. DISH seeks declaratory relief that the City's revocation of the Administrative Permit was a violation of the 47 U.S.C. § 332 and injunctive relief enjoining the enforcement of that revocation.

## FOURTH CAUSE OF ACTION

### (Writ of Administrative Mandate [Cal. Code Civ. Pro., § 1094.5])

81. DISH hereby re-alleges and incorporates herein by this reference each and every allegation set forth in Paragraphs 1 through 80 of this Complaint, as though fully set forth herein.

82. California Code of Civil Procedure section 1094.5 provides that a writ

of mandate lies when an administrative body acts outside the scope of its authority. A city acts in excess of its jurisdiction by failing to follow procedural rules and regulations it has established. Additionally, absent express authorization, an administrative body cannot reconsider or modify a decision that has become final under applicable procedural rules.

83. By allowing both the Planning Commission and the City Council to hear the Appeal, and subsequently revoking the Administrative Permit and issuing the Stop Work Order after the expiration of the appeal period in the Fountain Valley Municipal Code and the federal shot clock, the City acted in excess of its jurisdiction.

84. Additionally, Code of Civil Procedure section 1094.5 provides for a writ of mandate where the administrative body violated applicable law.

85. The City has failed to follow municipal law because it violated Fountain Valley Municipal Code section 21.28.090(a)(1)(B), which states that the City's decision on DISH's application "will be final ten calendar days following the date of the decision unless an appeal is filed." The City further violated Fountain Valley Municipal Code section 21.60.050(a)(1), which requires appeal applications to "be submitted in writing and filed with the department or city clerk . . . before five p.m. on the tenth calendar day following the date the decision was rendered by the director."

86. Finally, the City has failed to follow municipal law by acting on DISH's application for a wireless facility after the expiration of the 60-day time limit set forth in Fountain Valley Municipal Code section 21.28.090(a)(1)(B).

87. In violation of these sections of the Fountain Valley Municipal Code, the City's Planning Commission and City Council heard the Appeal, revoked the Administrative Permit, and issued a Stop Work Order after the Administrative Permit became final and after the expiration of the City's 60-day time limit.

88. Additionally, the City's actions violate state law, which prohibits the

City from revoking the Administrative Permit and issuing the Stop Work Order after DISH obtained vested rights in the Facility. *See Avco Community Developers, Inc. v. South Coast Reg'l Comm'n*, 17 Cal. 3d 785, 791 (1976).

89. The City also violated federal law, for the reasons set forth in DISH's Second and Third Causes of Action.

90. Finally, for the reasons set forth in the First Cause of Action, the City's action in revoking the Administrative Permit and issuing a Stop Work Order violated the U.S. Constitution, including the Fifth and Fourteenth Amendments.

91. DISH has exhausted all available administrative remedies.

92. DISH has a beneficial interest in this case because its Facility is the subject of the City's action and it is the permittee of the Administrative Permit and the subject of the Stop Work Order.

93. DISH has no plain, speedy or adequate alternative remedy at law to prohibit the City from acting in excess of its jurisdiction and violating the law by enforcing its revocation of its Administrative Permit and the Stop Work Order.

94. Accordingly, DISH seeks a peremptory writ of mandate directing the City to set aside Resolution No. 99-01, reinstate Administrative Wireless Communication Facilities Permit No. 22-09, and rescind the Stop Work Order affirmed by the City Council on October 3, 2023.

## FIFTH CAUSE OF ACTION

### (Writ of Ordinary Mandamus [Cal. Code Civ. Pro., § 1085])

95. DISH hereby re-alleges and incorporates herein by this reference each and every allegation set forth in Paragraphs 1 through 94 of this Complaint, as though fully set forth herein.

96. Code of Civil Procedure section 1085 provides that a writ of mandate lies to prohibit a public official from violating the law and compels a public official to perform an official act required by law. A writ must issue when there is no plain, speedy, and adequate alternative remedy.

97. The City has failed to follow municipal, state, and federal law for the reasons set forth above in the Fifth Cause of Action.

98. DISH has exhausted all available administrative remedies.

99. DISH has a beneficial interest in this case because its Facility is the subject of the City action and it is the permittee of the Administrative Permit and the subject of the Stop Work Order.

100. DISH has no plain, speedy or adequate alternative remedy at law to prohibit the City from violating the law by enforcing its revocation of the Administrative Permit and issuance of the Stop Work Order.

101. Accordingly, DISH seeks a peremptory writ of mandate directing the City to set aside Resolution No. 99-01, reinstate Administrative Wireless Communication Facilities Permit No. 22-09, and rescind the Stop Work Order affirmed by the City Council on October 3, 2023.

## SIXTH CAUSE OF ACTION
### (Inverse Condemnation)

102. DISH hereby re-alleges and incorporates herein by this reference each and every allegation set forth in Paragraphs 1 through 101 of this Complaint, as though fully set forth herein.

103. Article I, Section 19 of the California Constitution prohibits the taking of private property for public use without just compensation.

104. DISH has a vested property right in the Facility prior to the City's revocation of the Administrative Permit and issuance of the Stop Work Order on October 3, 2023.

105. The City's revocation of the Administrative Permit and issuance of the Stop Work Order constituted a taking of DISH's property.

106. The City of Fountain Valley has not paid just compensation to DISH for the taking of the property.

107. DISH is entitled to the payment of just compensation for (i) the value

of the Facility during the period of time between its revocation of the Administrative Permit and issuance of the Stop Work Order and the Court's reversal of that revocation, or (ii) if the revocation is upheld, the full value of the Facility prior to revocation of the Administrative Permit and issuance of the Stop Work Order.

## SEVENTH CAUSE OF ACTION
## (Declaratory Relief [Cal. Code Civ. Proc., § 1060])

108. DISH hereby re-alleges and incorporates herein by this reference each and every allegation set forth in Paragraphs 1 through 107 of this Complaint, as though fully set forth herein.

109. An actual controversy has arisen, and now exists, between DISH and the City concerning DISH's rights with respect to the Facility and the Administrative Permit and the Stop Work Order.

110. DISH contends that the Administrative Permit was validly issued, and that the City acted in violation of the law, as set forth more fully herein, in revoking the Administrative Permit and issuing the Stop Work Order.

111. The City, through its Resolution 99-01, contends that it is free to revoke the Administrative Permit and issue the Stop Work Order.

112. A judicial determination is necessary and appropriate at this time and under the circumstances in order that DISH and the City may establish DISH's rights associated with the Facility. Because DISH may have no other adequate remedy at law, this relief is necessary and appropriate.

## PRAYER

Wherefore, DISH prays for judgment as follows:

1. On the First Cause of Action for Violation of 42 U.S.C. § 1983:

    a. For injunctive relief against the City enjoining the revocation of the Administrative Permit and the enforcement of the Stop Work Order;

   b. For damages in an amount to be proven at the time of trial, but no less than $75,000;

   c. For prejudgment interest thereon; and

   d. For attorneys' fees as provided by law.

  2. On the Second Cause of Action for Violation of the FCC Shot Clock [47 U.S.C. § 332(c)(7)(B)(ii)]:

   a. For declaratory relief that the City's revocation of the Administrative Permit was a violation of 47 U.S.C. § 332; and

   b. For injunctive relief enjoining the enforcement of that revocation.

  3. On the Third Cause of Action for Unlawful Prohibition of the Provision of Personal Wireless Services [47 U.S.C. § 332(c)(7)(B)(i)]:

   a. For declaratory relief that the City's revocation of the Administrative Permit was a violation of the 47 U.S.C. § 332; and

   b. For injunctive relief enjoining the enforcement of that revocation.

  4. On the Fourth Cause of Action for Writ of Administrative Mandamus [Cal. Code Civ. Proc., § 1094.5]:

   a. For a peremptory writ of mandate setting aside the decision of the City Council and directing the City to (i) vacate its October 3, 3023 decision and/or (ii) enter a new decision in place thereof approving DISH's Administrative Permit and revoking the Stop Work Order.

  5. On the Fifth Cause of Action for Writ of Ordinary Mandamus [Cal. Code Civ. Pro., § 1085]:

   a. For a peremptory writ of mandate setting aside the decision of the City Council and directing the City to (i) vacate its October 3, 3023 decision and/or (ii) enter a new decision in place thereof approving DISH's Administrative Permit and revoking the Stop Work Order.

6. On the Sixth Cause of Action for Inverse Condemnation:

   a. For damages in an amount to be proven at trial, but no less than $75,000;

   b. For prejudgment interest thereon; and

   c. For attorneys' fees as may be allowed by law.

7. On the Seventh Cause of Action for Declaratory Relief:

   a. For a judicial declaration that the City's October 3, 2023, decision is void and of no effect because of its unconstitutional and/or unlawful nature and that the City must be estopped from further effectuating or refusing to rescind the decision; and

   b. For attorneys' fees as may be allowed by law.

8. On all causes of action:

   a. For costs of suit incurred herein; and

   b. For such other and further relief as the Court deems just and proper.

Plaintiff DISH hereby demands trial by jury.

DATED: November 2, 2023          COX, CASTLE & NICHOLSON LLP

                                 By: *Jamie L. Sprague*
                                 Morgan L. Gallagher
                                 Jamie L. Sprague
                                 Attorneys for Plaintiff
                                 DISH Network L.L.C.

105262\17080911